IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANI BAUTISTA by her next friend )
GUADALUPE BAUTISTA, )
 )
       Plaintiff, )
 ) No.  05 C 3874
  v. )
 ) Judge Robert W. Gettleman
JO ANNE B. BARNHART, Commissioner of )
Social Security Administration, )
 )
       Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Dani Bautista, by her mother, Guadalupe Bautista, seeks judicial review of a final decision by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA"), terminating Dani's supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq.  The court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  Dani has moved for summary judgment under Fed. R. Civ. P. 56, arguing that the decision of the Administrative Law Judge ("ALJ") affirming the termination of Dani's SSI benefits was not supported by substantial evidence in the administrative record and was not made in accordance with the legal standards applicable to SSI claims.  The Commissioner filed a cross-motion for summary judgment.  After complete review of the administrative record, as well as the pleadings and the memoranda on file, the Commissioner's motion for summary judgment is denied and Dani's motion for summary judgment is granted.  The court reverses the denial of benefits, and remands the case to the Commissioner for further hearing.

**PROCEDURAL HISTORY**

Plaintiff Dani Bautista ("Dani") is a minor and a resident of Illinois. She is represented in this action by her next friend and parent, Guadalupe Bautista ("Ms. Bautista"). Defendant Jo Anne B. Barnhart is the Commissioner of the Social Security Administration.

Ms. Bautista applied for SSI benefits on behalf of Dani on May 26, 1993, when Dani was three years old.[1] Dani's claim was granted as of May 1, 1993, based upon her cerebral palsy and developmental delay, which caused a marked limitation in cognitive development. The SSA reviewed Dani's case in April 1997, after the SSI childhood disability standard was amended by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996.[2] Dani's benefits were continued.

On February 8, 2000, Ms. Bautista was notified that Dani's SSI benefits had been terminated because her disability had ceased as of February 1, 2000. Dani's appeal of the cessation notice was denied by the SSA. Dani appealed and requested a hearing before an ALJ. ALJ John Brundage held a hearing on April 2, 2001, and affirmed the denial of benefits on May 21, 2001. Dani appealed the ALJ's denial to the Appeals Council, which denied Dani's request for review and adopted the decision of the ALJ as the final decision of the Commissioner. Dani filed a complaint in the U.S. District Court for the Northern District of Illinois, case No. 01 C

---

[1]Social security disability benefits are designed for disabled workers, but low-income parents may obtain them on behalf of their disabled children as well. 42 U.S.C. § 1383c(a)(3)(C).

[2]An individual under the age of 18 shall be considered disabled if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i).

8284. On June 21, 2002, Judge Shadur remanded the case to the SSA pursuant to a stipulation by the partes to remand for a new hearing. The SSA vacated the May 21, 2001, denial of benefits.

On March 21, 2003, a second hearing was held before ALJ John Brundage. On April 16, 2003, the ALJ again affirmed the denial of benefits. Dani appealed this denial to the Appeals Council, which again denied Dani's request for review and adopted the decision to terminate benefits as the final decision of the Commissioner. Dani filed the instant action seeking reversal the denial of Dani's claim for benefits, or in the alternative, remand to the SSA for further proceedings.

## FACTS[3]

Dani was born prematurely, and spent the first three months of her life in the hospital. Her developmental milestones were delayed. She did not walk until she was one and a half years old, and did not feed herself until age three. Dani was diagnosed with mild cerebral palsy at age two, which was characterized by left-sided muscle weakness with related orthopedic difficulties. She was treated with occupational and physical therapy. In August 1997, Ms. Bautista withdrew Dani from public school, and has home-schooled Dani and her younger brother since that time.

In January 2000, Dani scored a full scale I.Q. of 82 on the Wechsler Intelligence Scale for Children. In Fall 2000, Dani was evaluated by Children's Memorial Hospital ("Children's") to assess her cognitive functioning. The report from Children's, prepared by Dr. Jeanne Antisdel, Ph.D, under the supervision of Dr. Kori Levos-Skidmore, M.D., describes Dani as "an

---

[3]The following facts are taken from Dani's Local Rule 56.1 statement and the administrative record, which the Commissioner filed. The Commissioner did not file a L.R. 56.1 statement.

3

11 year, 2 month old girl with a history of prematurity, mild Cerebral Palsy, Attention Deficit Hyperactivity Disorder (Inattentive Type), Oppositional Defiant Disorder, and learning difficulties." The report also notes that "the results of the current evaluation are highly consistent with pervious evaluations and indicate low average cognitive abilities with deficits in reading, verbal comprehension, written language, arithmetic, attention, planning and fine motor skills." According to Children's, Dani's poor social skills and lack of meaningful peer friendships were also "of concern."

Also in Fall 2000, Dani was evaluated for education needs by the Leyden Area Special Education Cooperative. A school social worker completed a Vineland Adaptive Behavior Scale evaluation ("Vineland") by interviewing Ms. Bautista. The Vineland results indicated that Dani "exhibits a low level of adaptive behavior in all areas." Dr. Kenneth Kessler, Ph.D, testified as a medical expert at the March 21, 2003, ALJ hearing. Regarding the Vineland results, he opined that they "indicate pretty impaired functional behavior."

## **STANDARD**

The Commissioner's factual findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold the Commissioner's findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).

This standard of review recognizes that the ALJ is entrusted to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility.

4

Richardson, 402 U.S. at 399-400. The reviewing court may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the agency to decide whether a claimant is or is not disabled. Diaz, 55 F.3d at 305; Cass v. Shalala, 8 F.3d 552, 555 (7th Cir. 1993). If a court determines that the ALJ's decision is not supported by substantial evidence and should be reversed, a remand for further proceedings, not an award of benefits, is appropriate unless all factual issues have been resolved and the court can conclude, with some certainty, that the claimant is totally disabled. See Campbell v. Shalala, 988 F.2d 741, 744 (7th Cir. 1993).

## DISCUSSION

Dani argues the ALJ's determination that Dani is not disabled under the sequence established by the SSA's regulations to determine whether a child's disability has ceased was not supported by the administrative record and not in accordance with the legal standards applicable to SSI claims. In particular, Dani challenges the ALJ's finding that she did not qualify as disabled under 20 C.F.R. § 416.924(d), which states that a child is disabled if the functional limitations caused by her impairments "are the same as the disabling limitations of any listing[4], and therefore, functionally equivalent to that listing." To determine functional equivalence, the SSA looks at the child's functioning in six areas or domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. §§ 416.926a(b) & (g)-(l). A child is considered disabled if she has marked limitations in two areas or an extreme limitation in one area. 20 C.F.R. § 416.924a(d).

---

[4] 20 C.F.R. § 416.924(d) contains a "listing of impairments" that describes, for each of the major body systems, impairments for children that cause marked and severe functional limitations. 20 C.F.R. § 416.925(a).

In the instant case, Dani asserts that she has marked limitations in the second and third domains. The ALJ agreed that Dani was markedly limited in attending and completing tasks, the second domain, but found that she was not markedly limited in the third domain, interacting and relating with others. The ALJ stated that his decision regarding the third domain was based on Dr. Kessler's opinion that Dani has less than marked limitations in this domain and the ALJ's rejection of the Vineland test results based on his finding of Ms. Bautista's incredibility.

I.  **Dr. Kessler's testimony**

Regarding the first basis for the ALJ's holding, the ALJ mischaracterizes Dr. Kessler's testimony.[5] Dr. Kessler did not testify that Dani did not have marked limitations in interacting and relating with others, and did not otherwise opine definitively regarding her limitations. In fact, Dr. Kessler, who never examined Dani but reviewed her records, stated that "nothing that the examiner administered to Dani would give a whole lot of information on [the third domain.]" Dr. Kessler explained the Vineland test. He stated that assessing adaptive functioning is usually done using a combination of reports from school personnel and parents, but because Dani has been home schooled for several years, her mother was the only source of such information. As the ALJ notes in his opinion, Dr. Kessler testified that if Ms. Bautista's report during the Vineland interview of Dani's functioning were judged credible, Dani's scores "would indicate a pretty severe functional impairment," and Dani could "very well be at a level of marked impairment" for the third domain. At the end of the hearing, Dr. Kessler reiterated that because he did not have multiple sources to review regarding interacting and relating with others, and

---

[5]The court notes that the Commissioner also incorrectly asserts that Dr. Kessler opined that Dani had less-than-marked impairments in the other domains, and cites to portions of the transcript that do not support this assertion.

therefore he had "difficulty evaluating" the third domain. Thus, there is no basis in the record for the ALJ's statement that Dr. Kessler opined that Dani has less marked limitations in interacting and relating with others.

## II.     Ms. Bautista's credibility

The only remaining basis for the ALJ's decision regarding the third domain, then, is his rejection of the Vineland results, which Dr. Kessler testified indicated a marked impairment in the domain of interacting and relating with others. The ALJ discounted the Vineland test results because he found Ms. Bautista's responses to the Vineland interview to be incredible under Social Security Ruling ("SSR") 96-7p, which specifies seven factors to consider in making credibility determinations regarding an individual's self-reporting of medical symptoms.

The ALJ gave two reasons for finding Ms. Bautista incredible. First, the ALJ found that Ms. Bautista's decision to home school her daughter, contrary to recommendations of educational and psychological professionals, "renders any allegations of intensely debilitating behaviors and abilities from the claimant's mother's perspective less credible." According to the ALJ, this constitutes a failure to follow the prescribed treatment, which may preclude SSI benefits. Second, the ALJ found that Ms. Bautista's descriptions of her daughter's impairments were contradicted by the report from Children's and Ms. Bautista's decision to home school Dani.

Generally, a credibility assessment is afforded special deference because the ALJ is in the best position to see and hear the witness and determine credibility. Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Where, however, "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result," a court cannot uphold the

ALJ's determination. Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996); Groves v. Apfel, 148 F.3d 809, 811 (7th Cir. 1998). In analyzing an ALJ's opinion for such fatal gaps or contradictions, a court should "give the opinion a commonsensical reading rather than nitpicking at it." Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999). For the reasons discussed below, neither of the ALJ's reasons to discount Ms. Bautista's credibility is logically supported by substantial evidence in the administrative record.

**1.   Failure to follow prescribed treatment**

Under 20 C.F.R. § 404.1530, the failure to follow treatment prescribed by a physician without good reason can result in a denial of benefits if the treatment can ameliorate the impairment. 20 C.F.R. § 416.930(a) provides that to receive disability benefits, a child must follow treatment prescribed by her physician "if the treatment can reduce [her] functional limitations so that they are no longer marked and severe." Under SSR 96-7p, an "individual's statements may be less credible if...records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." The Seventh Circuit held in Brindisi v. Barnhart that in evaluating the credibility of statements, an ALJ must comply with the requirements of [SSR] 96-7p. 325 F.3d 783, 787 (7th Cir. 2003) (citation omitted).

In the instant case, Dani argues that the ALJ failed to apply the proper analysis to determine incredibility based on a failure to follow the prescribed treatment. The ALJ's opinion cites Dr. Kessler's testimony and the 2000 report from Children's detailing the likely benefits to Dani in a structured school setting. The Children's report states that continued home schooling "should be critically examined," and that "Dani may derive greater benefit from enrollment in the public school system and participation in a learning disabled classroom." The Children's

8

report also recommends "[w]eekly school-based social work services and participation in social skills group" if Dani is enrolled in public school. Contrary to the Commissioner's assertion, the Children's report did not state that home schooling "would be harmful" to Dani, but rather opined that Dani "would likely derive greater benefit from working with professionals specifically trained in the education of learning disabled students" and improve her social skills and peer interactions. At the ALJ hearing, Dr. Kessler testified that he generally agreed that Dani might benefit from receiving services from school, although he stated that she did not necessarily need to be enrolled in school full-time and that there was no guarantee that such services would improve Dani's scores or functioning.

The ALJ's opinion notes that more than two years after the Children's report, Dani was not enrolled in school or a social skills group, and finds that this undermines Ms. Bautista's credibility. Even assuming that schooling for a minor equates with medical treatment, the ALJ did not find that special education classes in a school setting would reduce Dani's functional limitations so that they are no longer marked, as required under 20 CFR § 404.1530. See also Rousey v. Heckler, 771 F.2d 1065, 1069 (7th Cir. 1985) (ALJ's denial of benefits because claimant did not stop smoking was unjustified because there was no evidence that, if the claimant had stopped smoking, she could have returned to work). In addition, neither the Children's report nor Dr. Kessler found that Dani had been harmed by the home schooling. The ALJ thus impermissibly substituted his own judgment when he concluded that "any significant and sustained opportunities to develop and sustain peer relationships have been hindered by [Ms. Bautista's] insistence of home schooling." See Id. (ALJ cannot make his own medical judgments

about the claimaint); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ "must not succumb to the temptation to play doctor and make...independent medical findings").

In addition, the ALJ's opinion does not discuss Ms. Bautista's reasons for not enrolling Dani in school. Under SSR 96-7p, the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." The ALJ mentions Ms. Bautista's testimony at the hearing only to note that she testified that she had recently begun to look for a specialized school to meet Dani's needs. This mischaracterizes Ms. Bautista's testimony by ignoring large portions of it that establish that she was attempting to find appropriate schools and services for Dani, and unfairly casts her in the light of a disinterested or defiant parent.

Ms. Bautista testified that she began home schooling Dani before she started the seventh grade because Dani was having trouble in school, including fighting and poor concentration, and the school could not guarantee Dani a placement in a classroom with fewer than nine students. Ms. Bautista stated that Dani could not concentrate with more than three or four children in the classroom. After beginning to home school Dani, Ms. Bautista repeatedly asked the public school to provide support services, but the school was not forthcoming with help. According to Ms. Bautista, she attempted to take Dani for testing and to get a curriculum to follow with Dani at home, but she was told the school system does not support home schooling. She also stated that in the last year she "came to the conclusion that home schooling is not the way to go anymore for [Dani]" and that "she's ready now to be incorporated into a school setting." Ms.

10

Bautista testified that she tried to enroll Dani in a specialized school in DuPage County, but could not because she is not a resident, that private schools and other tutoring programs are financially not feasible, and that she is having difficulties enrolling Dani in the local high school because she lacks school records. She also stated that she has visited websites in search of appropriate services for Dani. Ms. Bautista testified that she tries to provide social interactions for Dani through weekly community and church activities, but that other children are reluctant to interact with Dani.

The ALJ did not discuss any of this testimony, which supports Dani's argument that Ms. Bautista has been attempting doggedly to get Dani the educational and social services that she needs, as required by SSR 96-7p. See Parris v. Barnhart, 2004 WL 3008744, at *12 (N.D.Ill. Dec. 28, 2004) (ALJ erred under SSR 96-7p when his decision did not cite any explanation for claimant's lack of treatment); Lovellette v. Barnhart, 2003 WL 21918642, at *10 (N.D.Ind. June 25, 2003) ("[T]he ALJ has not provided any indication that he considered the reasons why the plaintiff refused to undergo the procedure prior the hearing, as specifically required by SSR 96-7p, so we are left to speculate as to whether there was a good reason for the plaintiff's delay."). Nothing in the record suggests that Ms. Bautista's description of her efforts to navigate the murky and often expensive waters of special education services is incredible or that her failure to enroll Dani in school demonstrates a volitional failure to follow prescribed treatment so as to preclude benefits. See DeFrancesco v. Bowen, 867 F.2d 1040, 1044 (7th Cir. 1989) (failure to follow prescribed treatment due to lack of financial resources is not a defense to a claim for disability benefits). The ALJ did not express skepticism about any of Ms. Bautista's testimony at the hearing regarding these efforts on her daughter's behalf. The ALJ finding that home

schooling Dani for five years undermines Ms. Bautista's credibility is thus not supported by substantial evidence. There is, therefore, no basis in the ALJ's opinion for the rejection of the Vineland results.

In an attempt to rescue the ALJ's credibility determination and counter Dani's charge that the ALJ played "amateur doctor," the Commissioner cites the findings of Dr. Paul Cadwell and Dr. Charles Harris, who completed the childhood disability evaluation form at the initial decision and reconsideration levels, respectively. After reviewing Dani's records, Drs. Cadwell and Harris each opined that she had no or less-than-marked limitations in all six domains of functional abilities. The ALJ, however, did not rely on the findings of either doctor in holding that Ms. Bautista's responses to the Vineland test were incredible. In fact, neither doctor is mentioned in the ALJ's opinion. The Commissioner cannot use this evidence to mend the holes in the ALJ's opinion because "principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002). The Commissioner cannot use "the record as a whole" to fill gaps in the ALJ's analysis. Id.

## 2. Dani's behavior during the Children's evaluation

The ALJ also states that Ms. Bautista's credibility was undermined because her responses to the Vineland test and descriptions of Dani's social ineptness were contradicted by the Children's report[6], which described Dani as "a friendly child who exhibited appropriate affect throughout the testing session," who was "eager and motivated to persistently complete testing

---

[6]The court notes that the ALJ attributes this description to Dr. Larsen, who treated Dani for cerebral palsy over a period of time. The quoted language, however, appears in the Children's report completed by Drs. Levos-Skidmore and Antisdel.

tasks."  The ALJ, however, gave undue weight to the Children's report because it was based on Drs. Levos-Skidmore and Antisdel's observations of Dani on a handful of occasions in an unusual environment and for a limited period of time only, rather than the observations of someone who interacted with Dani on a more regular basis.

The SSI childhood disability regulations recognize that "children may function differently in one-on-one settings than they do in their usual settings at home," and that a child "may appear more or less impaired on a single examination (such as a consultive examination) than indicated by information covering a longer period."  20 C.F.R. § 416.924a(b)(6).  Accordingly, the SSI regulations state, "We will not draw inferences about your functioning in other situations based only on how you function in a one-to-one, new, or unusual situation."  <u>Id.</u>  Dr. Kessler confirmed the wisdom of refraining from basing judgments on limited observations.  In response to a question from the ALJ regarding these observations in the Children's report, Dr. Kessler testified, "it would be a hard job to extrapolate from that into a child's social interaction with peers."  According to Dr. Kessler, "often times you can have a child who does just fine with adults, but you put them in a peer setting and it's a disaster."

Ms. Bautista's testimony demonstrates that Dr. Kessler's explanation applies to Dani.  Ms. Bautista stated that Dani is a "fooler" who can present as "sweet and ready to help" in situations such as at an evaluation or interview.  According to Ms. Bautista, however, "the minute it goes against her understanding or the minute it's not something that she can see," she becomes oppositional or passive-aggressive.  The SSI regulations and the testimony of Ms. Bautista and Dr. Kessler support Dani's argument that the ALJ gave unwarranted weight to the behavioral observations in the Children's report.

In the instant case, the ALJ based his credibility determination largely on Ms. Bautista's responses to the Vineland test, not on testimony during the hearing. The doctors who completed the Children's report and the social worker who administered the Vineland test and could speak to any indicia of untruthfulness by Ms. Bautista, testified at the hearing. The ALJ's credibility determination is thus entitled to less weight because it is not based on live testimony. See Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) (less weight given to ALJ credibility determination that was not based on subjective considerations, such as claimant's demeanor). In addition, the social worker's report of the Vineland results does not indicate that she suspected that Ms. Bautista was anything short of truthful. The ALJ did not ask Dr. Kessler if or how the credibility of a Vineland test respondent could be evaluated. There is therefore nothing in the record to cast aspersions on Ms. Bautista's responses to the Vineland test.

The Commissioner attempts to shore up the ALJ's credibility determination by citing the reports of Dr. Marianne Larsen and Dr. Don White suggesting that Dani was higher functioning. The ALJ, however, confuses Dr. Larsen's reports, which focused on Dani's orthopedic problems, with the Children's report, as discussed above. Dr. White opined that Dani had "few deficiencies in adaptive behavioral functioning," and that she was not disabled. The ALJ, however, did not rely on any of this evidence in his opinion. Indeed, the ALJ opinion does not even mention Dr. White. As discussed above, defendant cannot insert it now. See Steele, 290 F.3d at 941. In the instant case, the Children's report, which the ALJ mistakenly attributes to Dr. Larsen, is the only evidence referred to by the ALJ in support of his conclusion that Ms. Bautista's testimony regarding her daughter's functioning was incredible. Because the

14

Children's report does not provide a rational basis for the ALJ's credibility finding, it cannot be upheld.

The ALJ does not question the credibility of Ms. Bautista's testimony at the hearing, which supports the claim that Dani has significantly limited social skills. Ms. Bautista testified that Dani has significant difficulties relating to other people because she cannot see anything from another person's perspective, and that until recently she had no friends. The Children's report also provides support for Ms. Bautista's testimony, noting, "Of further concern is [Dani's] poor social skills and lack of meaningful peer relationships." She now has one friend, who is also disabled, but Ms. Bautista described their relationship as immature and shallow. Dr. Kessler testified that Dani's lack of friends or deep relationships, to which Ms. Bautista testified, indicates limitations in interacting and relating with others.

The decision of the Commissioner to terminate Dani's disability benefits in February 2000 is not supported by substantial evidence. Accordingly, the court grants Dani's motion for summary judgment and denies the Commissioner's motion for summary judgment. Because the court grants Dani's motion, it need not address whether Dani met or medically equaled the criteria for Listing 112.11. The court notes, however, that the ALJ failed to address Listing 112.11 after he rejected all evidence of Dani's functional limitation based on his finding that Ms. Bautista was incredible. In light of the reversal of the ALJ's credibility finding, the issue should be addressed if necessary on remand.

**III. Scope of remand**

In the instant case, Dani argues that the court should award benefits to her because this case has already been remanded once, the record was fully developed through two administrative

hearings, and the testimony of Dr. Kessler, the medical expert, and the medical evidence in the record demonstrate that Dani satisfied the SSI childhood disability standard as of February 1, 2000. Defendant does not respond to Dani's argument that this court should award her benefits rather than remand the case for further hearing.

Under the fourth sentence of the statute granting judicial review of the Commissioner's final decisions, 42 U.S.C. § 405(g), the court has authority to enter a judgment affirming, modifying, or reversing the Commissioner with or without remanding the cause for rehearing. See Taylor v. Barnhart, 425 F.3d 345, 355 (7th Cir. 2005). The Seventh Circuit has held, "When an ALJ's decision is not supported by substantial evidence, we have held that a remand for further proceedings is the appropriate remedy unless the evidence before the court compels an award of benefits." Id. An award of benefits is appropriate only where all factual issues have been resolved and "the record can yield but one supportable conclusion," Campbell, 988 F.2d at 744, or the if the agency has displayed "obduracy" in complying with the law of the case. Cf. Wilder v. Apfel, 153 F.3d 799, 804 (7th Cir. 1998) (remanding case with instructions to award benefits).

The court is not unsympathetic that Dani and Ms. Bautista have endured more than five years of protracted administrative and court proceedings, without the assistance of Dani's disability benefits, and notes that there appears to be merit to Dani's arguments. Nonetheless, the instant case does not meet either of the exceptions to the general rule that a remand for further proceedings is the appropriate remedy. Campbell v. Shalala, 988 F.2d 741, 744 (7th Cir. 1993).

Based on the record, the court cannot say "with certainty" that Dani is disabled. Diaz, 55 3.Fd at 305. As discussed above, the central premise of the ALJ's decision was flawed because there is insufficient evidence to discredit Ms. Bautista. Also as discussed above, however, there was other evidence in the record, including the evaluations of Drs. Cadwell and Harris, that Dani is not markedly limited. Because the ALJ failed to consider this evidence in his opinion, the court cannot determine how he would have balanced Ms. Bautista's testimony and the Vineland results with the other evidence. That is, the record does not overwhelmingly support a finding of disability, and the primary reason for reversal is the ALJ's failure to properly consider certain evidence and testimony. It is the ALJ's job and not the court's to weigh evidence. The Commissioner should therefore be given the opportunity to evaluate the evidence in light of this Memorandum Opinion and Order. Diaz, 55 F.3d at 305. Regarding "obduracy," although the case was previously remanded, it was by agreement, and the remand cannot be held against the Commissioner.

Accordingly, remand for further hearing is appropriate and the court denies Dani's motion to award benefits. The court recommends on remand that the Commissioner assign the matter to a different ALJ than ALJ Brundage, who has twice denied Dani's claim. While there is insufficient evidence of bias to order review by another judge, the ALJ's tone, particularly regarding home schooling, suggests that he "may have an unshakable commitment to the denial of this applicant's claim." Sarchet, 78 F.3d at 309 (7th Cir. 1996); see also Windus v. Barnhart, 345 F. Supp. 2d 928, 952 (E.D.Wis. 2004) (recommending different ALJ on remand).

## CONCLUSION

For the reasons set forth above, the court denies defendant Commissioner's motion for summary judgment, grants plaintiff Dani Bautista's motion for summary judgment, and denies plaintiff's motion for a judicial award of benefits. The case is remanded to the Social Security Administration for further hearing consistent with this Memorandum Opinion and Order.


**ENTER:**     **March 31, 2006**

_____
           **Robert W. Gettleman**
           **United States District Judge**